J-A26005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEEANNE FOUST, | |
| Appellant | No. 1275 MDA 2013 |

Appeal from the Judgment of Sentence July 1, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007276-2012

BEFORE:  BOWES, MUNDY, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 07, 2014**

Leeanne Foust appeals from the judgment of sentence of three years probation, the first thirty days of which were to be spent on house arrest with electronic monitoring.  The sentence was imposed by the trial court after a jury convicted Appellant of retail theft.  We affirm.

Appellant was convicted of retail theft based upon the following evidence.  On May 23, 2012, Irena Bones was working as a cashier at the Dollar General Store located on Edgar Street, York.  Sometime between five and six p.m., Ms. Bones observed Appellant enter the store, take a recycling bag that retailed for .75 cents, place various items in the bag, and leave the store without paying for the merchandise.  When Appellant entered the well-lit store, Ms. Bones was a couple of feet away from her.  During the remainder of the incident, Appellant was about fifteen feet from the witness.  Ms. Bones immediately reported the theft to her store manager,

Lori Kaufman, and police were notified. Ms. Bones was able to describe the perpetrator's hair color, clothing, and shoes.

On July 25, 2012, Spring Garden Police Officer Richard Morris showed Ms. Bones a picture created from the surveillance tape. The photograph depicted Appellant entering the Dollar General, and Ms. Bones identified Appellant as the perpetrator of the May 23, 2012 theft. She was then shown Appellant's driver's license, and Ms. Bones again identified Appellant as the culprit. At trial, Ms. Bones said that she was "100 percent" sure that Appellant was the guilty party because Appellant "was the first [person who] I ever personally caught shoplifting." N.T. Trial, 5/14-16/13, at 85.

Ms. Kaufman reported that there were seven surveillance cameras in the store that constantly recorded. After Ms. Bones told her about the incident, Ms. Kaufman checked the cameras, contacted police, burned a DVD of the surveillance tapes showing the shoplifting incident, and gave the DVD to police. It was ascertained from viewing the surveillance tape that Appellant took $13.34 in merchandise. The DVD was played for the jury.

Eric Foust, Appellant's estranged husband, testified as follows. He and Appellant were married for over twenty-four years, and they separated in July 2011. At the end of June, 2012, he was looking at some pictures on the Crime Stoppers Website and noticed an image of what appeared to be Appellant. Mr. Foust contacted police and asked to see the original picture, which was taken from the surveillance tapes and depicted the perpetrator of the May 23, 2012 retail theft. After being shown the original picture by

Officer Morris, Mr. Foust identified it as an image of Appellant entering the Dollar General. *Id*. at 134. He was ninety percent sure that the photograph was of Appellant based upon her facial features, posture, hair, and the manner in which she clutched her purse under her left arm.

Mr. Foust produced a credit card receipt, which Appellant had given him, evidencing payment for a doctor's visit at Wellspan, which is located next door to the Dollar General in question. Mr. Foust authenticated Appellant's signature on the credit card receipt, which was time stamped for 3:44 p.m. on May 23, 2012.

Based upon this evidence, the jury found Appellant guilty of retail theft. The matter proceeded to sentencing on July 1, 2013. The offense in question was Appellant's fifth retail theft conviction. The Commonwealth requested a sentence of imprisonment, but the trial court imposed three years probation with thirty days of that period spent on house arrest with electronic monitoring. The court also indicated that Appellant was responsible for paying the costs of house arrest with monitoring and that, if she failed to tender payment, she would spend that period in jail. In this appeal from the judgment of sentence, Appellant raises these contentions:

> Issue I. Was eye[witness] identification evidence properly admitted at trial, when the witness was shown a single picture of Foust alone for identification, without an independent basis for the witnesses' identification?
>
> Issue II. Was a medical receipt properly admitted into evidence at trial, when it was provided by Foust's estranged husband

which he obtained only for purposes of record keeping for a Health Savings Account?

Issue III. Was there sufficient evidence to convict Foust, when the eyewitness' testimony was shown to be clearly erroneous, and the remaining, properly admitted evidence was circumstantial?

Appellant's brief at 7.[1]

Appellant's first contention is that the trial court improperly permitted Ms. Bones to identify her as the perpetrator at trial due to a suggestive pre-trial identification procedure. This allegation pertains to the trial court's ruling on the admission of evidence at trial. ***Commonwealth v. Kendricks***, 30 A.3d 499 (Pa.Super. 2011). "Questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." ***Id***. at 503.

Appellant notes that the initial identification procedure employed by Officer Morris on July 25, 2012, with Ms. Bones was unduly suggestive since Ms. Bones was shown only photographs of Appellant. When police employ an improper pre-trial identification procedure, a witness may nonetheless identify a defendant as the perpetrator at trial if the tainted identification

---

[1] Normally, we would address a sufficiency challenge first since, if Appellant was to prevail on that contention, she would be entitled to be discharged. ***Commonwealth v. Koch***, 39 A.3d 996 (Pa.Super. 2011), *appeal granted on different grounds*, 44 A.3d 1147 (Pa. 2012). However, as analyzed in the text *infra*, Appellant's final allegation is not properly characterized as one relating to the sufficiency of the evidence. Hence, we will address the issues in the order raised in the brief.

procedure was not the cause of the identification of the defendant at trial. The law is as follows:

> When an out-of-court identification is alleged to be tainted, an in-court identification may still stand if, considering the totality of the circumstances, the identification "had an origin sufficiently distinguishable to be purged of the primary taint." **Commonwealth v. Abdul–Salaam**, 544 Pa. 514, 678 A.2d 342 (1996); **see also Commonwealth v. James**, 506 Pa. 526, 486 A.2d 376 (1985). The factors a court should consider in determining whether there was an independent basis for the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation. **Id.** at 380.

**Commonwealth v. Kendricks**, 30 A.3d 499, 506 (Pa.Super. 2011).

At the pre-trial hearing on this issue, Ms. Bones articulated that, even though it was dark outside, the inside of the store was extremely well lit. Omnibus Pretrial Hearing, 1/29/13, at 5. She observed Appellant enter the store, go directly to where the reusable recycling bags were located, and retrieve one. Although Ms. Bones was waiting on another customer, she looked at Appellant and "said hello like I do with everybody that comes in." **Id**. at 4. When Appellant took the bag, she was "a couple of feet from" the witness. **Id**. at 8.

Ms. Bones recalled that Appellant walked over to the Tastykake aisle and placed some items in her bag and that Appellant then proceeded to leave the store without paying for the items or the black bag. Ms. Bones

saw Appellant for over ninety seconds. *Id*. at 15. That witness testified that there were not many customers in the store since it was not a busy time of the day for the establishment.

Ms. Bones immediately reported the incident to the store manager. She was able to describe Appellant's height, build, hair color and length, the color of her shirt, the style and color of her pants, and her shoes, which were sandals. *Id*. at 7. When asked what it was in particular that made the event memorable, Ms. Bones responded, "She was my first. She was the first one ever that I caught stealing." *Id*. at 10. The witness was completely positive that Appellant was the culprit.

In light of these circumstances, the trial court did not abuse its discretion in concluding that there was an independent basis for admission of Ms. Bones's in-court identification of Appellant and that the suggestive pre-trial identification procedure was purged of its taint. *Kendricks*, *supra*.

Appellant's second contention relates to the admission of the receipt of her payment for her Wellspan visit. She first asserts that the receipt was subject to the spousal privilege outlined in 42 Pa.C.S. § 5914, which states, "Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial."

In rendering its ruling herein, the trial court relied upon ***Commonwealth v. Dubin***, 581 A.2d 944, 947 (Pa.Super. 1990). In that case, a wife was looking through her estranged husband's financial records for purposes of a pending divorce lawsuit. She discovered bank records, income tax returns, and daily work sheets. She delivered those documents to the prosecuting authorities. We ruled that giving the authorities the documents was not "equivalent to giving testimony against her husband and was not barred" from the spousal privilege. ***Id***. at 947. We continued that the "production of these documents also did not constitute a disclosure of confidential communications. The documents evidenced business transactions with third persons and were not confidential communications between spouses." ***Id***. We concluded that since the records in question "were not direct communications between the spouses, . . . the [spousal] privilege had no application." ***Id***.

***Dubin*** controls this issue. The credit card receipt from Wellspan was entered between Wellspan and Appellant and did not involve a communication between Appellant and her spouse. It evidenced a business transaction that Appellant conducted with a third party. The receipt was not tantamount to Mr. Foust offering testimony against Appellant. Hence, the spousal privilege did not apply in this case.

Alternatively, Appellant maintains that the receipt contained "protected health information under HIPAA, requiring her consent to be disclosed."

Appellant's brief at 21. However, that objection was not preserved below. Appellant objected to the admission of the credit card receipt on the basis that it was a confidential communication between spouses and that it prejudicially revealed that Appellant was receiving behavioral health treatment. N.T. Trial, 5/14-16/13, at 136, 143. She raised no HIPAA violation as a basis for exclusion of the evidence in question. Hence, this contention is waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Finally, Appellant purports to raise a sufficiency challenge. However, she actually argues that the "evidence properly admitted at trial was insufficient to prove, beyond a reasonable doubt, that Foust was guilty of retail theft." Appellant's brief at 22. She asks us to analyze the evidence adduced against her at trial without use of the proof that she previously argued should not have been introduced, *i.e.*, Ms. Bones' positive identification of Appellant as the perpetrator of the May 23, 2012 retail theft and the credit card receipt evidencing her financial transaction at Wellspan. This type of argument does not actually raise a sufficiency argument. As our Supreme Court noted in **Commonwealth v. Brown**, 52 A.3d 1139, 1188 (Pa. 2012) (citations and quotation marks omitted), a sufficiency claim is not reviewed based upon a diminished record:

> It is important to maintain the distinction between sufficiency review and rulings on evidence. When reviewing the sufficiency of the evidence, this Court must determine whether the evidence at trial, and all reasonable inferences derived

therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support the verdict. A sufficiency claim will not be reviewed on a diminished record, but rather on the evidence actually presented to the finder of fact rendering the questioned verdict. If some of the evidence relied upon to render the verdict was inadmissible, the appropriate remedy is to remand for a new hearing without the prohibited evidence. Only a successful sufficiency challenge considering the full record at trial may lead to the outright grant of relief.

Herein, Appellant is asking us to review her sufficiency claim without the use of evidence that she contends was improperly admitted. We cannot accede to this request. We conclude that the evidence supported the conviction in question. A person commits retail theft if he, *inter alia*,

takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof[.]

18 Pa.C.S. § 3929(1).

In this case, Ms. Bones unequivocally identified Appellant. She saw Appellant enter the store, take a bag that was not free, place items in the bag, and leave the store without paying for any of the items. This evidence supported the retail theft offense.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014